## No. 3930.

CHARLES HODGES *v.* GRAHAM, HODGES & CO., in Liquidation. E. J. HART, Garnishee.

The garnishee is a stakeholder, and on his answers the judgment should be for or against him. He has no interest in the contest between the creditor and debtor. But where the object of a motion to strike out part of the answers of the garnishee and of the traverse of the answers, is to attack the settlement made between the garnishee and the judgment debtor, the garnishee must be permitted to explain that he holds the thing attempted to be seized, by virtue of a title acquired by a settlement between himself and his debtor.

The plaintiff can not be allowed to change his garnishment process into a revocatory action. His remedy is by a direct action.

The garnishee can not be divested of his possession and alleged ownership through any process which would deprive him of explanations and defenses allowable in a direct action by the judgment debtor to recover his property.

APPEAL from the Fifth District Court, parish of Orleans. *Leaumont,* J. *Henry B. Kelly; Walter H. Rogers* and *W. W. Howe* for plaintiff and appellant. *Semmes & Mott* for garnishees. *H. R. Schmidt* curator *ad hoc.*

KENNARD, J. The plaintiff, Charles Hodges, having obtained on the nineteenth of June, 1871, a judgment against Graham, Hodges & Co., in liquidation, and the several members of the firm, Augustus C. Graham, Charles E. Goodwyn and William R. Hodges, for the sum of fifteen thousand eight hundred and forty-three dollars and ninety-five cents, issued a *fi. fa.,* and garnisheed E. J. Hart & Co., a commercial firm, domiciled in New Orleans, addressing to them twelve original and nine supplemental interrogatories of a most comprehensive character.

The garnishees made answers to the twelve original interrogatories, and under the ninth and twelfth answers set up the following special explanations as defenses, to wit:

*First*—We accounted for said consignments by settlements made with Charles E. Goodwyn on the fifteenth March, 1865, after the dissolution of the firm of Graham, Hodges & Co., which had taken place first of June, 1864; this settlement made by said Goodwyn was

acquiesced in by all the members of the firm, and it was made under the following circumstances : Charles E. Goodwyn at the time was largely a creditor of his firm on settlement with his copartners. Graham's account was balanced and there was nothing to his credit, and W. R. Hodges was in no better condition, while Goodwyn was largely a creditor as above. We were not only creditors of Graham, Hodges & Co., but also creditors of Goodwyn individually. Graham, Hodges & Co. were indebted to us on several accounts, viz : for advances on brandy consigned on joint account; for advances on whisky, on general merchandise account and for loans. The brandy account has been closed by a compromise made with Charles Hodges, the plaintiff in this suit, with the assent of W. R. Hodges, as appears by a copy of said compromise " of suit No. 5198 in the United States Circuit Court in the District of Louisiana, hereto annexed, marked ' C.' "

*Second*—That " the indebtedness to them on general account and loans, as appears by their own books, amounts to a very large sum of money, greatly exceeding the value of the whisky, after deducting the special advances."

*Third*—"That said settlement cannot be attacked by garnishee process, and that the only mode in which its validity can be questioned, is by direct action."

*Fourth*—That Charles Hodges, having at the time it was made, full knowledge of said settlement when made, or shortly afterward, is estopped from attacking it.

*Fifth*—That Charles Hodges, plaintiff, is not now, and was not at the time he instituted suit in this court, and has not been since twenty-seventh September, 1864, a creditor of Graham, Hodges & Co.; that on the contrary, on the twenty-seventh September, 1864, he was a debtor to Graham, Hodges & Co. in a sum exceeding $15,000, on a general balance of accounts.

*Sixth*—That this judgment was obtained by the fraud and collusion of W. R. Hodges with the plaintiff, Charles Hodges, his brother.

*Seventh*—That W. R. Hodges had, on his own petition, November 21, 1868, been adjudicated a bankrupt, in New York; that on his schedule then filed, his brother, Charles Hodges, was not recognized as a creditor, nor did he place this alleged claim against these garnishees as an asset on his schedule; that Wm. R. Hodges was a witness in this suit, made no defense, swore to the loss of the firm's books by fire.

The answer to the above twelve interrogatories, except those to the second, third, fourth and fifth, were traversed, and nine supplemental interrogatories filed. ,

A motion was then made by plaintiff's attorney that the garnishees show cause why "so much of their answers as set up pleas or defenses for the original defendants, and attacks the judgment under which E.

J. Hart & Co. have been garnisheed, should not be stricken out as irrelevant and inadmissible." Also to show cause why they should not make full and prompt answers to all interrogatories, original and supplemeutal, under penalty of having them taken for confessed. This rule was made absolute, so far as to compel the garnishees to answer, had the court *a qua* refused the prayer to strike out, reserving the right to determine whether the answers are relevant or irrelevant.

A motion for a new trial was made upon this order compelling prompt and more explicit answers, which prevailed, and on the twenty-ninth February, 1872, the original rule of twentieth December, 1871, taken by plaintiff to compel answers was dismissed.

From the judgment dismissing this rule this appeal is taken.

The plaintiff invokes the well settled principle of law that garnishees are mere stakeholders, bound to disclose the truth. As to them the question is, are they indebted and can they safely pay? They are not, as garnishees, permitted to interfere between plaintiff and defendant. This doctrine is too well settled to need repetition.

The indebtedness being acknowledged, the garnishee can not be heard to urge any plea to protect the judgment debtor, but where the question of his (the garnishee's) indebtedness is an open one, he can not be deprived of any substantial defense by reason of the form of action selected by the judgment creditor.

In answer to the first interrogatory the garnishees deny any and all indebtedness to the judgment debtors, Graham, Hodges & Co.

In answer to the ninth, they explain how their accounts were closed, allege a settlement acquiesced in by the firm and afterwards a compromise.

To enforce the strict rule invoked by plaintiffs against the garnishees, would deprive them of whatever force there may be in these explanations.

The third person can not be divested of his possession and alleged ownership by the plaintiff, though any process which would deprive him of explanations and defenses allowable in a direct action by the judgment debtor to recover his property.

Judgment affirmed.

Rehearing granted.

---

### On Rehearing.

Ludeling, C. J. In our former opinion we said : "The indebtedness being acknowledged, the garnishee can not be heard to urge any plea to protect the judgment debtor, but where the question of his (the garnishee's) indebtedness is an open one, he can not be deprived of any substantial defense by reason of the form of action selected by the judgment creditor." After reconsidering this case, we doubt the accuracy of that statement.

The garnishee is a stakeholder, and on his answers the judgment should be for or against him. He has no interest in the contest between the creditor and the debtor. Of course, the falsity of his answers may be shown if he has answered untruly. But, in this case, the object of the motion to strike out part of the answers of the garnishees and of the traverse of the answers is to attack the settlement made between the garnishees and the judgment debtor. The plaintiff "denies the truth of any and all the matters therein set forth by way of plea or defense of the original defendants, or as grounds of attack upon the judgment under which they have been garnished; avers that at the time of service of interrogatories upon them, and now, E. J. Hart & Co., were and are indebted, to Graham, Hodges & Co., in liquidation, in an amount sufficient to satisfy the judgment in this case; denies that there is or was any balance of account due E. J. Hart & Co., by the defendants, and avers that the amounts actually received by E. J. Hart & Co., as proceeds of the whiskies inquired of, were in excess of the special advances spoken of to an amount sufficient, after deducting all lawful commissions and charges, to satisfy the judgment in this case; denies that defendants are or were indebted to E. J. Hart & Co., in any sum on general balance of account, and avers that E. J. Hart & Co. were and are indebted to defendants over and above all debts or liabilities of defendants to them, to an amount sufficient to satisfy the judgment in this case; denies that E. J. Hart & Co. ever accounted to Graham, Hodges & Co. for the proceeds of the whisky inquired of, and avers that the pretended settlement with Charles E. Goodwyn, on the fifteenth of March, 1865, was a fraud on the firm of Graham, Hodges & Co., then in liquidation, and upon the creditors of said firm, and is an absolute nullity of no validity, force or effect in law for any purpose whatever; denies that said pretended settlement was ever acquiesced in by the other members of the firm, or either of them; denies that at the time of said pretended settlement the said Goodwyn was a creditor of his firm in any amount whatever, and avers that W. R. Hodges was a creditor to a considerable amount, while Graham's account was not balanced, though there was nothing to his credit; avers that the consignment of brandies referred to in the answers, as having been settled for by compromise, had been consigned to E. J. Hart & Co. by Graham, Hodges & Co., as agents of Charles Hodges, and that the proceeds actually received therefor by E. J. Hart & Co. were in excess of the special advances thereon to a very large amount; denies the truth of all other statements in said answer not hereinbefore specially admitted, except that it is true as stated in said answers, that it was agreed between Goodwyn and E. J. Hart & Co. that the proceeds of the consignments of whiskies, as well as of the brandies referred to in said answers, and the whiskies and brandies

remaining on hand on the fifteenth of March, 1865, at a valuation should be credited to the individual indebtedness of Goodwyn to E. J. Hart & Co., instead of being accounted for to his firm ; avers that it is not true that the pretended settlement with Goodwyn was *bona fide*, on a fair adjustment of accounts, but that it was at prices very much less than those actually received by E. J. Hart & Co. for the whiskies sold, and at a valuation for the whiskies taken to account much less than the market price at the time ; and that this pretended settlement, in addition to its other fraudulent features, was fraudulent also in this, that a large quantity of the whisky is not accounted for at all, as either having been sold or as remaining on hand ; denies .the truth of all the allegations relative to the compromise of the suit No. 5108 of the United States Circuit Court, except what appears on the face of the paper, it being admitted that the signatures thereto are genuine."

The garnishment process is the mode for making seizures of intangible property.    The garnishees say they hold the thing, attempted to be seized, by virtue of a title acquired by a settlement between themselves and their debtor.    Suppose the whiskies and brandies, etc., had been actually seized in the possession of the garnishees, and they had shown a title for the whiskies, etc., could that title be attacked collaterally ?    The seizing creditor can not disregard the title and possession of the garnishees and treat it as a nullity.

The difficulty in this case arises from the attempt of the plaintiff to change his garnishment process into a revocatory action.

This can not be done.    19 An. 16.    The grounds on which the plaintiff claims to set aside the transfer or settlement made in 1865, is that the partnership assets were given in payment of an individual debt of one of the partners ; that is, an unlawful preference given to the individual creditor over the partnership creditor.

His remedy, we think, is by a direct action.

It is therefore ordered that the decree heretofore rendered remain undisturbed.