14 So.2d 639

**LACOSTE et al. v. HICKEY, Recorder of Mortgages.**

**No. 37114.**

June 21, 1943.

Benjamin Y. Wolf, of New Orleans, for defendant and appellant.

Richard B. Montgomery, Jr., of New Orleans, for plaintiffs and appellees.

ROGERS, Justice.

On March 20, 1939, by an act passed before Richard B. Montgomery, Jr., notary public, Mrs. Ann Baird Lacoste and Adolph J. Lacoste purchased from David L. Cohn the real estate bearing Municipal Numbers 610-612 Dumaine Street, in the City of New Orleans. As part of the purchase price, the vendees executed ten promissory notes, each for the sum of $250, payable as follows: Notes 1 and 2 payable one year after date; notes 3 and 4 payable two years after date; notes 5 and 6 payable three years after date; notes 7 and 8 payable four years after date; and notes 9 and 10 payable five years after date, with the privilege of prepayment of all or any unpaid portion of the loan, on any interest date, after giving thirty days' notice of intention to anticipate payment at 102% of the principal, plus interest due to the date of payment, payable at the main branch of the Whitney National Bank, with six per cent per annum interest from date until paid, the notes being paraphed ne varietur by the notary to identify them with the notarial act.

According to previous agreement, F. Prevost Breckenridge purchased the mortgage notes at the time the act of sale and mortgage was executed. On March 15, 1940, Mr. and Mrs. Lacoste paid the mortgage notes in full, but they neglected to have the inscription of the mortgage cancelled. In November, 1942, they sold the property to Mrs. J. Thornwell Wither-

spoon, and on the mortgage certificate they obtained for the purpose of making the sale, the mortgage of $2,500, which they had granted on March 20, 1939, was reported as bearing upon the property.

On December 19, 1942, Mr. and Mrs. Lacoste, alleging that the mortgage notes had been paid in full and returned to them by the holder thereof, and that they had lost or misplaced the notes, brought a mandamus proceeding against the recorder of mortgages for the purpose of obtaining the cancellation of the inscription of the mortgage in his office. Relators prayed that F. Prevost Breckenridge, the holder of the mortgage notes, be notified of the proceeding.

The Recorder of Mortgages did not file any pleading, but he appeared through his attorney, at the hearing of the case and opposed relators' demand unless and until relators furnished an indemnity bond to protect him against any loss that might result from the cancellation of the inscription of the mortgage.

The judge of the district court ordered the writ of mandamus made peremptory, commanding the Recorder of Mortgages to cancel from the records of his office the inscription of the mortgage referred to in the petition without requiring relators to furnish an indemnity bond. The Recorder of Mortgages has appealed from the judgment.

It appears that after the mandamus proceeding was brought, Mr. and Mrs. Lacoste removed to Indianola, Mississippi. Their testimony and the testimony of Mrs. E. T. Baird, the mother of Mrs. Lacoste, was taken by deposition. Richard B. Montgomery, Jr., the notary public before whom the mortgage was executed, and F. Prevost Breckenridge, the original holder of the mortgage notes, also testified in the case.

Mrs. Baird, the mother of Mrs. Lacoste, testified that she knew the notes were paid by two checks issued by her daughter, Mrs. Ann Baird Lacoste, on March 15, 1940, but that she did not know of her own knowledge what became of the notes after they were paid.

Mr. and Mrs. Lacoste testified that on March 15, 1940, they paid the notes which were held by F. Prevost Breckenridge. Mrs. Lacoste issued two checks for $1,312.50 each, one to the order of Ethel M. Breckenridge and the other payable to the order of F. Prevost Breckenridge, in payment of the notes, the semiannual interest, and the bonus of $2.00 per hundred for anticipating payment of the notes. The checks were deposited by Mr. and Mrs. Breckenridge in the Whitney National Bank of New Orleans and were paid in due course. Copies of the checks, with their endorsements, are in the record.

Mr. and Mrs. Lacoste testified that after they took up their residence in Indianola, they remembered that the notes, which were returned to them by Mr. Breckenridge, were destroyed. They testified positively that after receiving the notes from Breckenridge, the notes, which were stamped paid, never passed out of their possession.

Mr. Breckenridge testified that he made the loan of $2,500 to Mr. and Mrs. Lacoste

and received the ten notes of $250 each to evidence the loan; that he bought half of the notes for his own account and half of the notes for the account of his wife. He stated that the payment of the amount represented by the notes was made to him direct and that after he had received the payment, he delivered the notes to Mr. and Mrs. Lacoste, who jointly came to his desk to make the payment. He testified that he did not cancel the signatures on the notes and did not recollect whether he had marked the notes paid.

The testimony of Mr. Breckenridge and the Lacostes and the transaction itself show that the mortgage notes were given for a specific debt and not for future use as collateral security.

■ With regard to mortgage notes, it appears to be well settled in the jurisprudence of this State that when such a note is given for a specific debt and payment of the debt is made and the note returned to the maker, both the note and the mortgage become extinguished and no subsequent reissue of the note can revive the mortgage. Mente & Co. v. Levy, 160 La. 496, 107 So. 318. In fact, this is the plain provision of the Civil Code. "Hence it happens, that in all cases where the principal debt is extinguished, the mortgage disappears with it." Civil Code, art. 3285.

■ It is otherwise when the mortgage note is not for a specific debt, but for future use, and in favor of any future holder. In such a case, the note may be reissued and used as collateral and the accessory right of mortgage preserved intact. Hollingsworth v. Ratcliff, 162 La. 281,

110 So. 422; Citizens' Nat. Bank v. Loranger, 163 La. 868, 113 So. 129.

■ The notes and mortgage in this case were executed for a specific debt, viz., as part of the purchase price of the property purchased by the relators from David L. Cohn. The Twenty-five Hundred Dollars represented by the mortgage notes was a loan secured by the makers of the notes from F. Prevost Breckenridge and the notes and mortgage were delivered to Breckenridge to evidence the loan. The particular debt represented by the notes was paid by relators, the makers of the notes, to Breckenridge and his wife, the original holders of the notes. By the payment of the original debt evidenced by the notes, the mortgage was extinguished and could not be revived and substituted for a new debt by the reissue of the notes.

It is contended on behalf of the Recorder of Mortgages that inasmuch as at the time the suit was brought the notes payable four and five years after date had not matured, if the notes have not as a matter of fact been destroyed, the Recorder of Mortgages may be forced to defend a suit which may arise as a consequence thereof, and that if the judgment cancelling the mortgage should be held not to protect him, he would be liable for the amount of the notes.

It may well be that, under the clause in the mortgage authorizing the makers of the notes to anticipate the payment thereof, the prepayment of the notes with the agreed premium and the accrued interest, actually had the effect of maturing the notes. But, be that as it may, the evidence

abundantly shows not only the payment of the notes and their delivery to the makers, but also the destruction of the notes by the makers.

Article 2279 of the Civil Code, which is relied on by the Recorder of Mortgages in support of his demand for an indemnity bond, provides that in cases where parties are seeking to recover on lost or destroyed instruments, "the judge may, if required, order reasonable security to be given to indemnify the party against the appearance of the instrument, in case circumstances render it necessary."

As the Recorder of Mortgages might be held in damages for cancelling a mortgage without proper authority, there is no doubt that where circumstances require it he might exact an indemnity bond. But the article of the Civil Code does not declare that such a bond can be exacted in every case.

In view of the facts disclosed by the record, it does not appear that this case is one in which relators ought to be required to give the bond demanded by the Recorder of Mortgages. These facts are that the notes were given for a specific purpose; that their payment was anticipated as provided in the contract; that they were paid to the original holder who delivered them to the makers; that by their payment both notes and mortgage were extinguished; that the notes themselves were marked paid, and that they were actually destroyed by the makers.

The Recorder of Mortgages, in case of serious doubt, has the right to compel parties to resort to the courts in order

to have it judicially determined whether or not a mortgage should be cancelled. Succession of Viard, 106 La. 73, 30 So. 246. In view of the fact that the destruction of the mortgage notes by relators has necessitated the filing of this proceeding, relators must bear the cost thereof.

For the reasons assigned, the judgment appealed from is affirmed, relators to pay all costs of suit.